My name is John DiMera. I'm with the law firm of Ruskin Moscow Forthachek. I represent Larry Marshak, Andrea Marshak, Paula Marshak, Charles Malik, Barry Singer, DCPM Inc., Live Gold Operations Inc., CalCap Ltd., Singer Management Consultants Inc., and Dave Rettles. I'm going to reserve two minutes, Your Honor. The finding of contempt by the district court must be reversed because Treadwell didn't prove contempt by clear and convincing evidence. The only person named in and bound by the injunction is Larry Marshak. The other motion respondents, none of them thought that the injunction applied to them. The court erroneously concluded that the individual motion respondents were directly enjoined as former employees of RCI, but the owners of DCPM were not employees of RCI when Judge Palatin surprisingly reversed the jury verdict in this case, in an earlier case, and issued the injunction. The only motion respondent that used the Ellsbury-Hobbs drifters is Singer Management, and that entity is not bound by the injunction. That entity entered into a license agreement with the estate of Odessa-Hobbs, and Treadwell, in this case, can't complain about that license as a result of a carefully worded, on-the-record court settlement in the New York State Supreme Court action, Queens County, in which Treadwell discontinued with prejudice her claims of trademark infringement against the estate of Ellsbury-Hobbs. You don't question that the district court has the power to sanction individuals who are not parties to an injunction, do you? Could you say that again, Your Honor? You don't question that the district court has power to hold in contempt individuals although they're not party to an injunction. Do you doubt that? I don't doubt that, Your Honor, but the point that I'm making here... I can put that another way, if you like. Yes. Do you doubt that Judge Debeboise could sanction Marshack under certain circumstances if he aided and abetted or assisted others in violating an order that the court signed? Do you doubt that? I don't doubt that, Your Honor. Okay. However, in this case, the motion respondents were not bound by or named in the injunction, except for Larry Marshack. Maybe that was my point. They don't have to be named in an injunction in order to be subject to the court's contempt powers. I understand. Is that right? That's correct, Your Honor. They weren't named specifically, but they don't even fit within the framework of the injunction is our position. That might be a better argument. The fact that they weren't named doesn't absolve Marshack. Okay. Right. Because the point that I was making before is that the owners of DCPM were not employees of RCI at the time when the injunction was put in place, and that's an important point here. There was no direct evidence of contempt by Larry Marshack, the individual that was named in the injunction. None. And the lower court conceded that point, Your Honor. However, the lower court concluded that it was sufficient that Larry Marshack was aware that the other motion respondents were violating the injunction. It's our position that Larry Marshack's awareness is certainly not enough under the circumstances. His awareness that Singer was promoting the Elspray-Hobbs Strip, this cannot be contempt because Singer was not enjoined. And unless Larry Marshack took some action on his own to violate the injunction or unless he controlled Singer, there should be no contempt under the circumstances. Treadwell failed to produce any evidence of a relationship between Larry Marshack and Singer management, and none existed. The fact that they were friends, as came out in the record, the transcript here, that's certainly not enough under the circumstances. But the district judge found that there were substantial similarities, weren't there, between Marshack and DCPM and RCI and Singer management? Well, having sort of interlocking individuals who operated from the same premises with the same phone number? Well, Your Honor, in the first decision, in the September decision, the court said that this was an elaborate shell game. And that that was the fact that DCPM was formed to evade the injunction, and that was the reason why it came up with the finding of contempt. But that linchpin, the fact that DCPM was formed to evade the injunction, that was taken out. And the court recognized that. And what the court said was, yes, DCPM was started seven months before that favorable jury verdict, and a year and a half before the judgment, notwithstanding the verdict, below by Judge Pollard. He corrected the chronology of the... He corrected the chronology. However, he didn't correct the fact that there was no contempt as a result of that. Was Judge Dugwood aware of the existence of this new entity? Was it ever raised at trial? Well, there was a two-day hearing, Your Honor, and it was raised at the hearing. And that's why he corrected... The new entity? Well, see, there was RCI that was formed... I'm sorry, Judge Pollatan. Did Judge Pollatan know about the new entity? This was not involved in that. RCI... Are you saying whether Judge Pollatan knew that DCPM was formed? Yes. I mean, I didn't see it in the opinion, but... Right. It was formed, you know, it was formed. DCPM was formed... Yeah, you made that point. In January 1998, prior to the time. And I don't know whether that came up specifically in that case. All right, so your point is that the judge improperly held in contempt a number of individuals... That's correct, Your Honor. And that claim had nothing to do with violating the restraining order that Judge Pollatan signed and the Court of Appeals affirmed. That's correct. So here, your contention is Marshak and others were out of the picture. Exactly. And Marshak was... After the injunction, Marshak was just a mere employee of DCPM. But the judge... Had nothing to... And are we not reviewing his decisions for an abuse of discretion? That's correct, Your Honor. It's a pretty high hurdle. It's a pretty high burden, but I think that you can find it in this case. How did he abuse his discretion? Well, by finding that these individuals were part of this elaborate shell game. And as I said before, that linchpin came out when it was as a result of DCPM being formed and operating for a period of time with RCI under the... They operated during the same period of time. And this... You have to understand that under the circumstances, DCPM is not a successor to RCI. This is one of the things that came out in the post-hearing briefs. They're not successors. And that's because there's no continuity of ownership. RCI and DCPM, as I said before, coexisted throughout 1998. They didn't assume RCI's liabilities. There's no continuity of operations. Larry was the owner of RCI. Larry Marshak was the owner of RCI, but he was never an owner of DCPM. So there are all these things there. The finances were completely... But the judge found pretty much the opposite, didn't he? That there was overlapping employees, for example. Both businesses were operated out of the same residence. But that's not enough, Your Honor. Under the circumstances, that should not be controlling. Andrea Marshak and Paula Marshak were principals of DCPM. They operated out of a particular location, which is Andrea Marshak's house. That should not have a bearing as to whether there is contempt under the circumstances. Yeah, but you're saying there are two different entities. There are facts, but... Judge Debovois found that you can call them two different entities if you want, but in essence, they're pretty much one and the same. And DCPM, I guess I've got the right acronym, violated the order. And that's the essence of this case. And we disagree with that, right. Okay, I know you're... I reserve two minutes. Why don't we add another three minutes, because I'd like to hear the rest of you. Are you done with your argument? No, Your Honor. No, no, no, I've just... But you have Mr. Davis is also presenting. I'm making a wish on rebuttal. Okay. All right. Mr. Davis. Good afternoon, Your Honor. My name is Lowell Davis, and I appear before you pro se, and I'd like to thank you for the opportunity to argue my appeal. Your Honor, to the extent that I've been adjudicated in contempt arising from giving advice purportedly to a client, I would argue that there was an error of law in the standard that was applied to me. The standard to be applied to an attorney includes the normal factors, a normal burden, but also a willfulness and malice. When I say to the extent that I purportedly gave advice to a client, it came from myself and Charles Malick. My testimony said that none of the other non-parties approached me with regard to the ability to license the use of the Ellsbury-Hobbs drifters from Odessa-Hobbs, who was my client. My testimony was that they didn't approach me. Charles Malick's testimony was that I approached him. Testimony of Dave Rebels and Barry Singer and Larry Marshak was indefinite in that I had said it was okay, but there's an issue here that was never gone into any detail as to exactly who my client is. Based upon my testimony and based upon Malick's testimony, it would appear that my client was Odessa-Hobbs, whom I had represented since 1992 through January of 1999 in an action to recover royalties and in that action, Treadwell had interposed a counterclaim for infringement. The matter was settled and the settlement and the clients were voir dire by Judge Colizzi and Thomas versus Drifters, Inc. You participated in the setting up of Singer Management Corporation? In the initial motion for contempt, the evidence was from the Department of State, New York Department of State. I'm listed as the agent for service of process. So there was never any testimony that I was anything other, nor documentary evidence, that I was other than the agent for service of process. In fact, when the contempt proceeding was commenced, the process server who wanted to serve Singer Management came to my office and delivered to me the papers. What was the specific basis for Judge Debevoise to hold you in contempt of the restraining order? Well, to me, it wasn't clear because the initial moving papers merely stated that I had set up the corporation and the evidence was the listings from the Department of State. Well, that was a question I was asking you. Were you not involved in the setting up of the corporation of Singer Management? Well, outside the record, I made a phone call called Blackstone and said, incorporate Singer Management, 200 chairs, no part. Wasn't that part of Judge Debevoise's ruling in the case? I would respectfully disagree because my testimony... Well, you might disagree with his decision, but wasn't that part of his ruling? It was contained in his ruling, but there was testimony, Your Honor, that I never prepared the license agreement between Singer Management and Odessa Hobbs. I was not involved in that at all. So he would have abused his discretion because he got the facts wrong? Is that your... He would have abused his discretion that the facts were wrong. He made an error of law in that he applied the wrong standard for an attorney. Now, Your Honor, understand that the settlement of the Thomas versus Drifters, Inc. took place in January of 1999. The allegations in this action with regard to the contempt established that the use of the Ellsbury Hobbs Drifters took place two years later in 2001. There was no evidence of any causation or other than just having this conversation with Charles Malick at one point in time that resulted in anyone actually using the name for entertainment purposes. So normally when the issue of an attorney contempt arises, it's contemporaneous. You know, the counsel would... I mean, the case that was relied upon in this case was Manus, I believe, and there the attorney counseled the client to take the Fifth Amendment. In other instances, the advice is contemporaneous with the act. Here, there's no linkage. Well, there's a violation according to the judge of your... you're violating the court's injunctive order. The specific facts relied upon by Judge Debevoise was that I had represented Marshack in the past, that I had... actually was representing Marshack before... Then it was that you aided and assisted Marshack in violating the court's restraining order. It wasn't that specific. Now, you may disagree with that, but wasn't that his decision? No, I would disagree with that. All right. Tell me what his decision is. He said that I was responsible for creating the corporations, but the only actual evidence was that I served as the agent for process. There was no other evidence. Did you save time for rebuttal? I reserved one minute. One minute. All right. We'll get you back. All right. Thank you. Ms. Salvo? Yes. May it please the court, my name is Cindy Salvo with the Salvo Law Firm, and I represent Fay Treadwell and Treadwell's Drifters in this matter. What happened here, Your Honors, was clearly a case where Larry Marshack and his minions came up with what Judge Debevoise called an elaborate shell game to violate the injunction. Prior to the injunction, Larry Marshack ran a company called RCI. And in answer to Your Honors' question about Judge Politan, Judge Politan did not know about the formation of DCPM. If he had, undoubtedly it would have been specifically named in the injunction as opposed to RCI solely. But Larry Marshack, prior to the injunction, was the boss of this business that was promoting the Drifters. After the injunction was over, the Drifters were pulled out of the show that they were performing in for a short time while this elaborate shell game obviously was devised. The way that it worked was this. Larry Marshack stepped down as the boss and became a so-called employee. His employers were none other than his wife and his sister-in-law and his accountant. They all continued to work down the basement in Larry Marshack's home where they had worked for RCI. Now they worked for DCPM doing the same thing. A private investigator testified during the contempt hearing that, and there was a tape made, that he spoke with Larry Marshack's wife and his sister-in-law and both of them were the Ellsbury-Hobbs Drifters. They quoted a price for booking them. And they said, one of them said, well, we work very closely with the agency that books the Ellsbury-Hobbs Drifters. That would be Singer, right? That would be Singer Management. How did we hook Singer into this whole thing? Well, Barry Singer was a long-time close business associate of Larry Marshack. And the accountant who was... Was he subject to the original Judge Palatine injunction? He wasn't named specifically, no. But would he be... I know not named specifically, but Marshack was the only one who was named specifically. And RCI. Well, that's right. But would he, in your view, be Singer or Singer's company? Would that be under the... Even impliedly under the original... Well, if they were aiding and abetting Larry Marshack, correct. There's also another little connection here. Charles Malick, who was the accountant I was speaking about, worked for both entities. He worked for DCPM, and he worked for Barry Singer. Conveniently, so when he worked down the basement, what they could do is when the wife or the sister-in-law answered the phone, if someone did want to book, let's say, the platters, and the wife and the sister-in-law would say, okay, we can book the platters for you, and we work closely with the one who books the drifters, all they have to do is hand the phone over to Charles Malick, who was there, and he could book the drifters. They were all working together, clearly working together. And that was Judge Debegoise's finding. That was Judge Debegoise's factual finding. Let me ask you some specific questions about this case, though. I'm sorry, Your Honor? Let me ask you some specific questions. One, I'd like to ask you about the remedy that I am sure you are interested in. Yes, I'm anxious to discuss that. Right before that, how about Mr. Davis? How was Mr. Davis directly subject to the injunction? Well, Mr. Davis did give advice to Charles Malick, to Barry Singer, probably to the entire elaborate shell gang. Well, he's a lawyer, right? Yes, Your Honor, but the point is that the advice that he gave could not have been given in good faith. Clearly, he knew, he had to know, that this activity would violate the injunction. If he felt that there was some answer to why it didn't violate the injunction, for example, he was talking about Odessa Hobbs selling a license and so on, he knew the remedy. He knew you had to go before the court and ask them to vacate, modify the injunction, or ask for a declaratory judgment to find out did this violate the injunction or not. Judge Debegoise made a finding that he clearly was aware that there was an injunction against the use of the name of the Drifters. Absolutely, Your Honor. I believe that Mr. Davis will admit that he knew about the injunction. I'm questioning that. How do you get help with Mr. Revels? Mr. Revels, the court was entitled to find Mr. Revels in contempt even though he wasn't a named party because he did get up and speak during the hearing about putting He wasn't served process, though. That's correct. He wasn't served with process, but there is precedent for holding someone in contempt if they aid and abet someone. If that information comes out that they aided and abetted somebody and they weren't served with process because it wasn't known until later on. How does he get to be heard, then? Shouldn't he have a right to be heard? Well, he was heard during the hearing. He admitted that he put this precedent together. He testified based on what lawyers asked him. He didn't defend himself, did he? No. He wasn't given that right. He didn't. That's correct. I understand he showed up and was a witness, but just because he was in court that day doesn't necessarily mean he's a party to the case. Well, Your Honor, I just believe that based on his testimony which unequivocally said that he did know about the injunction that he put together a press kit promoting the Ellsbury-Hobbs drifters. Was he aware when he went into that courtroom that he was subject to a charge of contempt? I honestly don't know, Your Honor. I don't know if he did know that. And he wasn't counseled? Let me put it another way. Was he represented in court by a lawyer? I believe he was represented by the lawyers that were there representing everybody. But he was called as a witness, not as a person who was subject to a contempt action. That's possible. It's possible he was not represented. That's correct. Why don't you just hand a complaint across the table and then he's served, right? We could have done that. Okay. All right. Let me ask you the other question I wanted to ask. Yes, Your Honor. I have an interest in is in the remedy. So you bring this contempt action and you have a hearing. I don't know how long the hearing took. Two days. Two days. At the end of the hearing, you basically got nothing. That's correct, Your Honor. I think you got nothing. I think you got, by you, I mean Treadwell. Treadwell. Her attorney fee. You were paid. I guess you got something. You got your fees paid. Well, Treadwell was awarded attorney's fee. By you, I mean Treadwell. So Treadwell was not granted a remedy. Is that correct? She was granted attorney's fees. Correct, Your Honor. Yes, correct, Your Honor. But she was not granted relief. She was not granted the accounting that was asked for in this case. Why is that? Why is that an abuse of discretion? Well, you know, ordinarily, I would say an abuse of discretion, you're correct, is a very, very high standard. But in this case, the equities are so incredibly imbalanced that it shocks, or should shock, the conscience of the court. What happened here is Larry Marshak was held to have violated the injunction in the underlying case. And this court affirmed that, that finding back in 2001. An accounting was ordered at that time. Larry Marshak declared bankruptcy afterwards. And he testified at the contempt hearing that he declared bankruptcy because that award would have ruined him. So Treadwell never received any damages, even though the court had held that Larry Marshak had been infringed on by the court. He had been charging upon the drifter's mark since 1970. Can I ask you a question? I guess in terms of the lapse of time, and I guess this goes to latches and some other issues. Yes, Your Honor. But I understand your argument about bankruptcy. But your adversary points out that you really only raised that as a reason for the time it took here on appeal. Did the district court not get to consider that fact or that argument? Well, it was in the record below that Larry Marshak had come out of bankruptcy only four months before this was filed. But I'm not sure if I'm answering your question. Did you raise that as an argument as to why you didn't file until five years later? It wasn't raised, no. I think more of what was raised, Faye Treadwell submitted a certification. She was ill, living in England. She had been fighting so many infringers even in Europe that she didn't have the money even anymore to do anything more. But getting back to the accounting, so no money changed hands at that time with the first accounting because of Marshak's bankruptcy. Then you have Marshak and the others are all found in contempt. And what happens? They say, okay, now we'll stop promoting the Ellsbury-Hobbs Drifters, something they should have done back in 2001. They made an enormous, probably millions of dollars in appearance fees for the Ellsbury-Hobbs Drifters after the injunction was entered, I'm sorry, in between the time the injunction was entered and the contempt. And all that money has stayed with Larry Marshak. It must have evaporated because he was in bankruptcy. No, no, he was in bankruptcy back in 2001. You mean the money was made after he came out of bankruptcy? Oh, absolutely. Oh, alright. Well, money was made by all the other parties as well. The wife, the brother-in-law, sister-in-law, whatever, all those people. But what happened here is that an accounting, as an equitable remedy here, the accounting was appropriate under a deterrence theory. It sounds like a very good idea but the district judge said you waited too long for an accounting. It's a theory of latches, I guess. Too long, you slept on your rights and you're not, therefore, entitled to it. Well, your honors, he did say that and what happened, I believe, though, doesn't change. He looked at the fact that you could be encouraging people to sit on their rights, to sit back and not do anything and wait for profits to add up and he was concerned about that. But really, not only that isn't what was happening here, also you had a much more important... What was your answer to that? The answer to him saying that we sat back, as I said, it was because Faye Treadwell was old and in Europe fighting other infringers and that's why she didn't go after this more quickly. Also Larry Marshak was in bankruptcy. That was an issue that came up. As part of latches, you have to show prejudice. Was there any showing that Marshak or D.C. PM was prejudiced by the delay? It's very interesting because Larry, I'm sorry, Judge Debra Boyce cited a case, University of Pittsburgh versus Champion Products talking about in that case there was detrimental reliance, therefore prejudice and that's why an accounting was not ordered in that case. But that case was completely an opposite. In that case, the defendant had been selling souvenirs of University of Pittsburgh and University of Pittsburgh knew and allowed it for a very long time. As a matter of fact, Champion Products actually sold these souvenirs in the gift shop of University of Pittsburgh. So when it came later on that they sued for infringement, the court said, well we'll give you the injunction that they're not allowed to sell this anymore but we can't give you an accounting because these people detrimentally relied on selling this product. You never said anything you didn't care and the infringement wasn't willful. In this case, that's why that case that Judge Debra Boyce cited was an opposite. In this case, not only do you have willful infringement but you have contempt and you have a situation where there was prejudice, Your Honor, as you asked. Because even if Faye Treadwell wasn't bringing this action quickly, the court could have brought the action at any time because their order was being violated. So these people cannot say they were prejudiced or suffered any detrimental reliance. Could they say in good faith we believe that we had a right to use the drifter's mark? There could not have been good faith in this case, Your Honor. Absolutely no possible way there could have been good faith. This was clearly, Judge Debra Boyce found it to be an elaborate shell game and Judge Debra Boyce found that the testimony by these parties was disingenuous, unconvincing, straining credulity, and incomprehensible. This was absolutely an elaborate shell game and to allow a man and his cronies to benefit since 1970 from infringing upon the drifter's trademark for all those years and never pay one penny is just so inequitable that it shocks the conscience of the court. And this court found in Banjo Buddies vs. Wronowski, which was a 2005 case, this court said that if there's a windfall let it go to the plaintiff and not to the defendant because the defendant is the infringer and it's better that it goes to the plaintiff. In this case here, and in Banjo Buddies there was no willful infringement. What did the plaintiff get out of this contempt proceeding? This one? Nothing other than the show finally closed that should have closed years before and absolutely no remuneration. Every penny Larry Marshak has earned infringing on the drifter's trademark since 1970 has remained in Larry Marshak's pocket. Has it finally been determined that Treadwell has the exclusive use of the drifter's mark? I don't believe that it's been adjudicated any further. I know that there was an issue with Bill Pinckney, who was a former drifter, and I understand that there was some... He died, didn't he? He did, Your Honor. He died in July of last year. There was some issue Judge Debrevoise actually addressed that and said that he did not believe that Bill Pinckney had any right to the drifter's name. There was a contract, an employment contract, that was discovered later on, which showed that Bill Pinckney was a mere employee and could not have... Your time is almost up. I just want to put one question to you and maybe you can give me a short answer. How did Judge Debrevoise abuse his discretion in failing to order an accounting? I believe he abused his discretion because accounting is an equitable remedy and the equities here are so fair. Judge Debrevoise's fear that people might sit back on their rights was not as strong as the Congressional purpose to make infringement unprofitable. By not awarding an accounting, you are making the infringement not only profitable, but extremely profitable, and you make it into what was a good business decision for Larry Marshak. It was a good business decision to be in contempt because he suffered nothing. The show closed when it should have closed years ago, but all that money remained in his pocket, and that's what Judge Debrevoise should have been more concerned with. Are you able now to... Can you just file a trademark action then and seek trademark relief? Against Marshak? To my knowledge, they're not using the drifter's mark anymore. I don't know. Well, for what they did recently. I guess we maybe could, Your Honor. I'd have to see if that made sense and statute of limitations and other issues. Thank you, Your Honor. Thank you. Mr. DiMera? Your Honor, I just want to address a few points. Ms. Salvo brings up Mrs. Treadwell. I want to raise the issue that Ms. Treadwell did submit a declaration in this case, but she never appeared. We never had an opportunity to cross-examine her at the hearing, the two-day hearing. So all of these accusations that are made are, we would assert, inadmissible hearsay. It seems like she got a completely pyrrhic victory here. Empty, sort of meaningless victory because she got nothing for bringing a contemporary. Well, you know, the court in this case analyzed the totality of the circumstances and it has broad discretion under the circumstances. One of the things that the court said that Treadwell never proved any actual damages and that she sat on her rights for five years. Let me get back to my point. The district court found that numerous parties were in contempt of Judge Politan's order, which was upheld by this court. Oh, excuse me. Which was upheld by this court. Numerous people were in contempt. But the only thing the court did was to grant counsel fees and nothing to the party who prevailed. Can you respond to that? Your Honor, under the circumstances the court totally examined all of the circumstances and all of the theories underlying damages and an accounting and equitably it came to the decision that Ms. Treadwell did not suffer any damages and that she sat on her rights for too long. The court also said that she hasn't used the mark in the United States for a... One second. Did the court conclude that Treadwell suffered no damages? Yes, no actual damages. But isn't that the purpose of an accounting? She put on no case, Your Honor, about any damages. There was no... The court came to a conclusion that there were no actual damages. Excuse me. Isn't that the purpose of asking for an accounting so I can determine whether or not I have lost money as a result of the violation of the order? There was no evidence presented, Your Honor. All right. Go ahead. And that Treadwell failed to raise any evidence of any loss opportunity as a result of the use of the Ellsbury-Hobbs drifters. And Judge, I wanted to address the issue that you raised regarding singer management. There is no... It's our position that it's a disjunction. And certainly Barry Singer was never an employee or anything else of Larry Marshak. And the only thread that they have in this is Charles Malick. But Charles Malick, with regard to RCI, was an independent accountant. And there is case law that we cite in our brief that says that an independent accountant should not be considered an employee and shouldn't be bound under the circumstances. Can I ask something else? Do you know if any of the attorneys in the... Back to the attorney who handled this, did they put in an appearance on behalf of Rebels? He came in, Your Honor, and he was not represented as a defendant. He was... He came in as a witness. Okay. And Your Honor, one final point. We're asking the court to vacate or modify the injunction in light of that Queen Supreme case, the Ellsbury-Hobbs drifters case where we say that the circumstances have changed as a result of the on-the-record settlement where... We can't modify the injunction as an appellate court. Don't you have to do that before the district court? I think that you do have the power to modify an injunction. All right. Also it should be modified as a result of the 2004... I'd like to have lots of power, but... Okay. Thank you, Your Honor. Limited power. Mr. Davis? Thank you, Mr. DeMaro. Thank you. I'll try to be very quick. First, Appendix 5.11 is the initial decision of Judge Debevoise. In that decision in discussing the issue of latches, he said that there was inexcusable delay on the part of Treadwell in bringing this motion. The court discussed a letter that Joe Vincent had sent to Barry Singer in November of 01, and my response to that letter the next day ... Was the judge's decision inexcusable delay, or was it that Treadwell did not present any evidence of damages? Two decisions, Your Honor. The first decision on the contempt in denying... I briefed the issue of the latches. And so in the initial decision, it's in the appendix at 5.11, the court in denying the latches defense did say that notwithstanding that Treadwell's delay was inexcusable, that the respondents did not show any prejudice. Would you not infer from the improper use of a trademark that there were damages? No. You couldn't infer? Your Honor, going back, and you have to forgive me because my knowledge, you know, none of this really, a lot of this is not in the record, which went to one of the other arguments that I haven't, you know, orally argued, and that was whether or not this never should have been a contempt proceeding and it should have been an infringement. Because there are case law that when you're dealing with intellectual property, the threshold issue should be whether or not this conduct is a contempt or an infringement. Now, I think the court might be confused as to a timeline. Jury comes in. I'll give you about a minute because your time is really running over. I'll talk fast. Then please grant me a little more time. In Marshack v. Treadwell, the jury comes in and finds that Treadwell had an abandonment. January of 1999, in Thomas v. Drifters, Inc., which was the state action in Queens County, there the Treadwell withdrew her counterclaim against Hobbs, at this point Hobbs' estate, and Thomas for trademark infringement. August of that year is when Polliton's decision came down with the injunction. So the sequence is, now, at the prospect of the record, Ms. Salvo inquires of Barry Singer, isn't it true that, and it's vague in terms of, but the named respondents, corporations, were enjoined from using the Ellsbury Hobbs Drifters name? Judge Debevoise sustained the objection. Clearly, Judge Debevoise was concluding that there was no injunction against Odessa Hobbs using the name, the Ellsbury Hobbs Drifters. I believe that this is important, not only because if it's my advice that gets me to be found in content, was my advice without the standard is wrongfulness. Was there any doubt as to the wrongfulness? I'm standing next to Judge Polizzi, Faye Treadwell, and Mrs. Hobbs, and Judge Polizzi says, Mrs. Treadwell, you understand you're withdrawing your counterclaim for trademark infringement with prejudice. Where does my bet, Faye, come in? We're going to have to take a look at the record, but you've gone way over your allotted time. I heard you utter that you knew about Revels, whether there was an attorney placing appearance for him. When the briefing came on, they did brief on behalf of Dave Revels, but no, there was no notice of appearance put in prior to the hearing, or prior to after the hearing. And even then, I wouldn't construe it as a notice of appearance. And one other thing, please. Faye Treadwell did apply for a trademark application, and it was dismissed. And Pinkney, even though he's deceased, still has a pending trademark application. Thank you, Mr. Davis. You're welcome. And Mr. DiMero and Ms. Selva, thank you very much. We'll take the case under advisement. Ruggie, we're going to come back in about five minutes, okay? That's fine. Okay, good. Thank you.